UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL PORTER, # 129599, )
a/k/a N. Kalonji Owusu I, )
 )
        Plaintiff, )    Case No. 1:10-cv-131
 )
v. )    Honorable Paul L. Maloney
 )
JAMES VANTATENHOVE, et al., )    **REPORT AND RECOMMENDATION**
 )
        Defendants. )
_____)

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-2(a). This lawsuit is satellite litigation spawned from one of plaintiff's earlier lawsuits (*Porter v. Caruso, et al.*, No. 1:05-cv-562 (W.D. Mich.)), in which, among other things, plaintiff brought unsuccessful claims under RLUIPA and the First Amendment seeking to force Michigan Department of Corrections (MDOC) employees to address him by his preferred appellation: "N. Kalongi Owusu I." Plaintiff signed his complaint in this case on February 8, 2010, the same day he signed his notice of appeal in the earlier case. (C*ompare* docket # 1, ID# 22 *with* No. 1:05-cv-562, docket # 270, ID# 2029). Under the mailbox rule, this lawsuit is deemed filed as of February 9, 2010, the date plaintiff gave his complaint to prison officials for mailing to the court.[1] (Certificate of Mailing, docket # 3, ID# 33).

---

[1]*See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008).

Plaintiff's February 9, 2010 complaint is based on events allegedly occurring at Bellamy Creek Correctional Facility (IBC) in April and May 2006. He alleges that Corrections Officer James VanTatenhove violated his First Amendment and RLUIPA rights by referring to him by his MDOC prisoner number or the name under which he was sentenced to life imprisonment for murder, Nathaniel Porter. Plaintiff alleges that VanTatenhove and an unknown IBC mailroom supervisor violated his First Amendment right of access to courts. The second portion of plaintiff's complaint is based on conditions of his 2008 confinement at the Ryan Correctional Facility (RRF). Plaintiff alleges that Assistant Resident Unit Supervisor (ARUS) Rhonda Robertson violated his First Amendment rights on November 3, 2008, by causing a retaliatory misconduct charge to be filed against plaintiff, and on December 2, 2008, by not handling plaintiff's mail with the desired dispatch. Further, plaintiff alleges that RRF Mailroom Clerk Carolyn Green-Chaney, violated his First Amendment right of access to courts by opening an envelope containing a docket sheet from this court outside his presence. Plaintiff sues the defendants in their individual capacities[2] and seeks damages and declaratory and injunctive relief.

The matter is now before the court on a Rule 12(b)(6) motion to dismiss by defendants VanTatenhove, Robertson, and Green-Chaney. (docket # 35). Plaintiff's response to defendants' motion (docket # 42) included a proposed amended complaint (docket # 42-1), which the court has allowed plaintiff to file. (Order, docket # __). Further, plaintiff's response provides notice of his voluntary dismissal of all his claims against defendant Green-Chaney. (*Id.* at ¶¶ 4, 5,

---

[2] "Monetary damages against the defendants in their official capacities are not available under § 1983, *Johnson v. Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004), or under RLUIPA, *Sossaman v. Texas*, 131 S. Ct. 1651, 1663 (2011); *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009)." *Cain v. Mich. Dep't of Corr.*, No. 11-1205, slip op. at 2 (6th Cir. Nov. 23, 2011).

ID# 147).³  Upon review, I recommend that defendants' Rule 12(b)(6) motion be granted and that this case be dismissed.

### Applicable Standards

Rule 12(b)(6) authorizes the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  Under Rule 8(a)(2) of the Federal Rules of Civil Procedure a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) and FED. R. CIV. P. 8(a)(2)).  While this notice pleading standard does require not require "detailed" factual allegations, it does require more than the bare assertion of legal conclusions.  *See Twombly*, 550 U.S. at 555; *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).

Generally, when considering a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to plaintiff, accept the plaintiff's factual allegations as true, and draw all reasonable factual inferences in plaintiff's favor.  *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "[A] plaintiff's

---

³Under Rule 41(a)(1)(A) of the Federal Rules of Civil Procedure, plaintiff is authorized to dismiss an action without a court order by filing a notice of dismissal "before the opposing party serves either an answer or a motion for summary judgment." FED. R. CIV. P. 41(a)(1)(A)(i). Defendants have not filed an answer or a motion for summary judgment.  Thus, plaintiff remained free to dismiss all his claims against defendant Green-Chaney.

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and the formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009); *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). Courts are not required to conjure up unpleaded allegations, nor accept unwarranted factual inferences. *See Total Benefits Planning*, 552 F.3d at 434. "To survive a motion to dismiss, [plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010)(quoting *Twombly*, 550 U.S. at 570); *see Center for Bio-Ethical Reform, Inc.*, 648 F.3d at 369.

When considering whether to grant a Rule 12(b)(6) motion, the court primarily considers the complaint's allegations, but may also take into account "exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendants['] motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein . . . ." *Rondigo L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). The court is free to take into consideration it own records, *see Lynch v. Leis*, 382 F.3d 642, 648 n. 5 (6th Cir. 2004), and it is particularly appropriate to do so here because plaintiff repeatedly invokes his earlier lawsuit and much of his amended complaint would be incomprehensible absent reference to court records from the earlier case.

*Pro se* pleadings are held to a less stringent standard than formal pleadings drafted by licensed attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). However, even the lenient treatment generally given *pro se* pleadings has its limits. *See Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). "A plaintiff must 'plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.'" *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 129 S. Ct. at 1949). "A plaintiff falls short if []he pleads facts 'merely consistent with the defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct[.]'" *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 129 S. Ct. at 1949, 1950); *see Center for Bio-Ethical Reform, Inc.*, 648 F.3d at 369.

### Plaintiff's Allegations

1.   Allegations Related to Plaintiff's 2006 Confinement at IBC

Plaintiff, Nathaniel Porter, MDOC prisoner number 129599, is serving a non-parolable life sentence for first-degree murder. He states that in 2004, while he was an inmate at the Freeland Correctional Facility, he changed his name to "N. Kalongi Owusu I." (Am. Compl. ¶¶ 6, 10).[4] He is currently an inmate at the Michigan Reformatory (RMI). In April and May 2006, he was an inmate at the Bellamy Creek Correctional Facility (IBC). (¶¶ 19, 59). Corrections Officer James VanTatenhove, now retired, and an unknown mailroom supervisor were employed by the State of Michigan at IBC during this time period. (¶¶ 7, 8).

Plaintiff alleges that under his "professed religious belief (ancient Egyptian religion, now known as Kemetic Science), one's name is regarded as the ninth division of the soul and integral to his spiritual regeneration and resurrection." (¶ 12). He alleges that defendant VanTatenhove failed to accede to his demands that he be addressed by his preferred appellation of N. Kalonji Owusu I. Officer VanTatenhove addressed plaintiff by his MDOC prisoner number or his name at the time of commitment to the MDOC's custody, Nathaniel Porter. (¶¶ 6, 21, 23).

---

[4]Unless otherwise specified, all paragraph references herein are references to plaintiff's amended complaint. (docket # 42-1, ID#s 149-71).

On April 7, 2006, Officer VanTatenhove used the name Nathaniel Porter on a handwritten pass rather than N. Kalonji Owusu I. (¶¶ 27-28). Plaintiff declined this pass because it did not include a desired cross-reference to his preferred name. Plaintiff did not pick up his mail from this court on April 7, 2006. (¶¶ 29-31, 43, 47). The mail was marked as refused by control center and sent back to the prison mailroom. (¶ 32). Plaintiff believes that the unknown mailroom supervisor should have made a second attempt at delivery rather than returning the envelope to the court. (¶¶ 56-58, 64-65, 71-72). The envelope in question contained a copy of the report and recommendation entered by United States Magistrate Judge Ellen Carmody in *Porter v. Caruso, et al.,* No. 1:05-cv-562 (W.D. Mich.). (¶¶ 63, 67). Judge Carmody's recommendation was that the court deny a motion to dismiss made by defendants Burnett, Bozung, and Morris. (No. 1:05-cv-562, docket # 54, ID#s 279-82).

On April 9, 2006, plaintiff picked up other legal mail from control center. He incorrectly assumed that this was the same mail he had not picked up on April 7, 2006. (¶¶ 33-35, 55).

On or about April 15, 2006, plaintiff received a copy of the defendants' objections to Judge Carmody's report and recommendation. (¶ 52). Plaintiff requested, and on or about April 26, 2006, received, a copy of Judge Carmody's report and recommendation. (¶ 53). On May 3, 2006, plaintiff filed his response to defendants' objections. (¶ 54; *see* No. 1:05-cv-562, docket # 58). On May 9, 2006, Senior United States District Judge Richard Enslen adopted the report and

recommendation over defendants' objections and denied defendants' motion to dismiss.[5] (No. 1:05-cv-562, 05/09/06 Order, docket # 60).

The passes written by defendant VanTatenhove on May 1 and 5, 2006, used plaintiff's MDOC prisoner number. On these occasions, plaintiff accepted the passes and picked up his mail. (¶¶ 36-49).

On May 11, 2006, plaintiff was transferred from IBC to the Ryan Correctional Facility (RRF). (¶ 59). When the envelope containing Judge Enslen's order denying the motion to dismiss arrived at IBC, the unknown mailroom supervisor returned it to the court rather than forwarding it to plaintiff at RRF. ( ¶¶ 61-63, 68, 73). On May 20, 2006, plaintiff signed a notice of change of prison address and mailed it to the court. (No. 1:05-cv-562, docket # 64, ID# 305). On June 2, 2006, the court received a May 28, 2006 letter from plaintiff (*Id.*, docket # 68, ID# 310) stating that he had not received a copy of Judge Enslen's order denying defendants' motion to dismiss. On June 7, 2006, the court sent plaintiff another copy of the order.

On June 12, 2006, plaintiff wrote a letter to the court in which he acknowledged his receipt of Judge Enslen's order. (¶ 65; No. 1:05-cv-562, docket # 69). Plaintiff argued that he had not actually refused to accept his mail on April 7, 2006, but had only rejected the pass provided. He used this occasion to express his ongoing disagreement with the court's use of his prisoner number and commitment name on pleadings and envelopes transmitting case-related materials:[6]

---

[5] Plaintiff's persistent allegations that he was "prejudiced" by missing a deadline for filing objections to Magistrate Judge Carmody's report and recommendation are frivolous. Judge Enslen ruled in his favor and denied the defendants' motion to dismiss.

[6] On November 28, 2005, Judge Enslen entered the first of several orders denying plaintiff's motions demanding that the court use the name "N. Kalongi Owusu I" on all court documents and correspondence related to plaintiff. Judge Enslen explained that the court's use of the name

> While at Bellamy Creek Correctional Facility, certain housing unit officers refused to acknowledge my legal name, "Owusu," and therefore refused to write my legal name on the passes for me to pick up my mail in the control center because, they said, the mail was addressed to me by my committed name, "Porter." Consequently, when they refused to write my legal name on the pass(es), I refused the pass(es), not the mail. In turn, the officers informed the control center that I refused the mail.
>
> * * *
>
> Be advised that this malicious denial of my legal mail by the MDOC, over the issue of my legal name, is a <u>direct</u> <u>result</u> of this Court changing my legal name as the name in which I filed my original Complaint, and accordingly, addressing ALL MAIL to me in my committed name. Before the Court changed the name in which I filed my pleadings, I had <u>no</u> problems with the receipt of my mail, legal or otherwise. As far as the particular officers are concerned, they reasoned that if the Court is not using/honoring my legal name, they need not either!

(*Id.*, at ID# 314).

Plaintiff alleges that on June 13, 2006, he "initiated" Step I grievances (Nos. IBC-06-09-2776-28e and IBC-06-09-2677-28e)[7] against VanTatenhove and the unknown IBC mailroom supervisor "alleging interference with his legal mail and violation of his right of access to courts." (¶ 66). Plaintiff characterizes the contents of his grievances and the related grievance responses rather than attaching the underlying documents as exhibits to his amended complaint. He describes his grievance against VanTatenhove in these terms:

---

Nathaniel Porter and prisoner number 129599 was not done out of disrespect for plaintiff's religious name. He noted that the use of the prisoner's name as of the date of commitment and the prisoner's number was necessary for court use and to assist in the delivery of documents to the correct prisoner. (No. 1:05-cv-562, docket # 16, ID#s 152-53). Judge Enslen did not find it necessary to elaborate on the critical role the MDOC's prisoner number and name as of date of commitment play in enforcing the Prison Litigation Reform Act's "three strikes" rule. *See* 28 U.S.C. § 1915(g). Magistrate Judge Carmody's February 10, 2006 order denying plaintiff's third motion on the issue noted the absence of evidence of any legal name change. "Thus, it appears more accurate to conclude that Plaintiff has not changed his name, but has instead merely adopted an alias." (No. 1:05-cv-562, docket # 38, ID# 253).

[7]The number sequence "06-09" in the grievance numbers indicates that the grievances were filed in September 2006, rather than June 2006 as plaintiff now alleges. Plaintiff's allegation that he filed his grievances on June 13, 2006, is accepted as true for present purposes.

> Specifically regarding defendant VanTatenhove, Plaintiff alleges that the Court's docket sheet disclosed that legal mail he denied plaintiff receipt of in his cross-referenced legal name on 04/07/06, was, in fact, the magistrate's R&R which plaintiff was required to respond within 10 days, which Defendant VanTatenhove caused Plaintiff to miss.

(¶ 67). On September 7, 2006, IBC's grievance coordinator rejected plaintiff's grievance as untimely. (¶ 69). Plaintiff states that he appealed the rejection of his grievance against VanTatenhove through a Step III decision entered on February 9, 2007. (¶ 70). Plaintiff does not allege the reasons why his grievance was denied at Step III. (*Id.*).

Plaintiff states that he initiated his grievance against IBC's mailroom supervisor on June 13, 2006. (¶ 66). He describes his grievance against the IBC mailroom supervisor as follows:

> And, specifically regarding Defendant IBC mailroom supervisor, Plaintiff alleged that the court's docket sheet disclosed that the defendant intentionally prevented Plaintiff from receiving his mail in a timely manner by holding several items of mail, including the 04/06/06 Report & Recommendation, marked "refused" and Court Order which she marked "person not here" in the mailroom for two (2) weeks each before returning them to the Court, and further, by returning said items of mail to the court when PD-05.03.118, Prisoner Mail, specifically required that any mail sent to a prisoner who has been transferred to another facility be forwarded to the prisoner at the new facility, in this case, RRF.

(¶ 68). This grievance was rejected as untimely on September 7, 2006. (¶ 69). Plaintiff states that his Step III appeal was denied on February 9, 2007, but does not provide any information regarding the basis for the Step III denial. (¶ 70).

　　　　2.　　Allegations Related to Plaintiff's 2008 Confinement at RRF

In 2008, plaintiff was an inmate at RRF. Rhonda Robertson was employed at RRF as an assistant resident unit supervisor (ARUS). (¶ 9). On August 22, 2008, Judge Janet T. Neff entered an order dismissing all plaintiff's claims in case no. 1:05-cv-562 with the exception of his claims against defendant Burnett. Plaintiff received a three-day jury trial from October 7 through

October 9, 2008, on his First Amendment and RLUIPA claims against Burnett based on the denial of plaintiff's request to purchase an ankh cross and the denial of his request for a kosher meal plan. During the trial, the parties reached a settlement regarding plaintiff's claim for injunctive relief regarding possession of an ankh cross. (10/9/08 Order, docket # 219). On October 9, 2008, the jury rendered a verdict in Burnett's favor, and Judge Neff entered a judgment based on the jury's verdict. (docket #s 221-22).

Plaintiff alleges that after he lost at trial, there were "ongoing negotiations" regarding the settled ankh cross issue, and that ARUS Robertson expressed some frustration about the time she was spending relaying messages to and from plaintiff. (¶¶ 89-90, 94, 112-13). Plaintiff alleges that his activities "impinged upon Robertson's personal time, or other activities, including doing nothing." (¶ 91). On November 3, 2008, plaintiff was on the telephone with Attorney Wesselhoff when the evening prisoner count was announced. (¶ 95). When plaintiff failed to immediately terminate his phone call, Corrections Officer Morris yelled at plaintiff to "get off the phone." (¶¶ 95-96). Robertson overheard the yelling from her office and told Morris to write plaintiff up for being out of place for the evening prisoner count. (¶ 97). When plaintiff heard this, he decided to get off the telephone and return to his cell. (¶ 96). Plaintiff alleges that Morris announced the count time early, making the misconduct charge "false." (¶¶ 113-14, 119-20). Plaintiff states that he "went into his room before RUO Morris made her 'count round.'" (¶ 98). On November 4, 2008, Morris filed a misconduct charge against plaintiff which was later withdrawn. (¶ 99).

On December 2, 2008, plaintiff gave Robertson mail addressed to Attorney Wesselhoff and requested an expedited legal mail disbursement authorization. (¶¶ 74-77). According to plaintiff, on December 9, 2008, Robertson's supervisor, Resident Unit Manager

Greason, found the mail in Robertson's office and took it to the mail room. (¶ 86). On December 12, 2008, plaintiff spoke to his attorney on the telephone and Wesselhoff confirmed his receipt of the mail from plaintiff earlier that day. (¶¶ 79-80). Plaintiff alleges that the mail consisted of case law in support of his position that he was entitled to an award of costs as a prevailing party and information regarding ankh cross vendors. (¶¶ 82, 103, 116-17). Plaintiff alleges that if these items had been mailed by Robertson with the speed he desired, his attorney would not have been forced to file a February 6, 2009 motion "to enforce the judgment by specific relief." (No. 1:05-cv-562, docket # 235). Plaintiff's attorney withdrew this motion on April 1, 2009. (¶¶ 102-10; No. 1:05-cv-562, docket # 243).

On October 28, 2008, following the entry of judgment in his favor, Burnett filed a motion to tax costs. Plaintiff responded by filing a January 29, 2009 motion to tax costs, followed by an amended motion on April 16, 2009. On April 30, 2009, Judge Neff entered an opinion and judgment granting defendant's motion to tax costs, granting in part and denying in part plaintiff's motion to tax costs, and denying plaintiff's amended motion to tax costs. The net judgment in defendant Burnett's favor was $9.52. (No. 1:05-cv-562, docket # 254).

On February 9, 2010, plaintiff filed this lawsuit.

## Discussion

1. Mootness

Plaintiff is an inmate at the Michigan Reformatory (RMI). Defendants are employed by the State of Michigan at IBC and RRF or have retired. All plaintiff's claims for injunctive and

declaratory relief against the defendants are moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

    2.    RLUIPA

Plaintiff alleges that in 2006, defendant VanTatenhove violated a statutory right under RLUIPA to have his religious name used on the prison passes allowing him movement between various ICF units. "Under RLUIPA, 'no government shall impose a substantial burden on the religious exercise of a person residing or confined in an institution' . . . unless the government can show (1) that the imposition of the burden 'is in the furtherance of a compelling governmental interest,' and (2) the burden furthers that interest by use of the 'least restrictive means.'" *Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010) (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)).

Plaintiff has not alleged facts establishing the threshold requirement of a "substantial" burden on his religious exercise. The purported burden of being referred to by his prisoner number and/or his name at the time of commitment is decidedly insubstantial. *See Barhite*, 377 F. App'x at 511. Furthermore, damages are not available against defendant VanTatenhove in his official capacity. *See Sossamon v. Texas*, 131 S. Ct. 1651 (2011). As VanTatenhove is not a recipient of federal funding, RLUIPA does not provide a cause of action against him in his individual capacity. *See Maddox v. Love*, 655 F.3d 709, 717 (7th Cir. 2011) (citing *Nelson v. Miller*, 570 F.3d 868, 885-89 (7th Cir. 2009)); *DeMoss v. Crain*, 636 F.3d 145, 151 (5th Cir. 2011) (citing *Sossamon v. Texas*, 560 F.3d 316, 327-29 (5th Cir. 2009)); *Rendelman v. Rouse*, 569 F.3d 182, 187-89 (4th Cir. 2009). I find that plaintiff's RLUIPA claims against defendant VanTatenhove cannot withstand scrutiny under Rule 12(b)(6) standards.

3.   Statute of Limitations

All plaintiff's section 1983 claims against defendant VanTatenhove and the unknown IBC mailroom supervisor are barred by the statute of limitations. Claims under section 1983 are subject to a three-year statute of limitations. *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) ("We have held that the applicable statute of limitations to be borrowed for § 1983 actions arising in Michigan is the state's three-year limitations period for personal injury claims.") (citing MICH. COMP. LAWS § 600.5805(10)); *see also Xu v. Michigan State Univ.*, 195 F. App'x 452, 455 (6th Cir. 2006); *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986). The court must determine the date on which plaintiff's claims against each defendant accrued. "[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "[F]ederal standards govern when the statute [of limitations] begins to run." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *see Wilson v. Garcia*, 471 U.S. 261, 267 (1985). "Under the traditional rule of accrual . . . the tort cause of action accrues, and the statute of limitation begins to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of injury is not then known or predictable." *Wallace v. Kato*, 549 U.S. at 391. The statute of limitations begins to run when the plaintiff knows or has reason to know that the act providing the basis for his injury has occurred. *See Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007); *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1997).

Plaintiff's claims against VanTatenhove accrued on April 7, May 1, and May 5, 2006, when VanTatenhove offered or gave plaintiff passes with plaintiff's prisoner number and/or the name Nathaniel Porter rather than "N. Kalonji Owusu I." Plaintiff states that he initiated a grievance

against VanTatenhove on June 13, 2006. By that time, a minimum of 37 days of the three-year statute of limitations period had already run. Assuming that plaintiff filed his grievance on the date he claims (rather than September 2006 as otherwise indicated by the grievance number), the statute of limitations would have been tolled from June 13, 2006 to February 9, 2007. *See Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). The statute of limitations period began to run again on February 10, 2007, and so it expired on January 5, 2010. Plaintiff signed his complaint on February 8, 2010, and he gave it to prison officials for mailing the next day. Under the mailbox rule, plaintiff's complaint is deemed filed as of February 9, 2010. *See Brand v. Motley*, 526 F.3d at 925. Plaintiff filed his complaint against VanTatenhove more than a month after the three-year statute of limitations had expired.

Plaintiff's claims against the unknown IBC mailroom supervisor are likewise time-barred. Plaintiff would have received his copy of Magistrate Judge Carmody's report and recommendation on April 7, 2006, if he had accepted the pass from defendant VanTatenhove. The mailroom supervisor purportedly erred on April 21, 2006, by mailing the envelope containing a copy of the report and recommendation back to the court. Plaintiff's claim accrued on that date. Fifty-three days of the limitations period passed before plaintiff "initiated" his grievance. The limitations period was tolled from June 13, 2006, through February 9, 2007, during the pendency of the grievance. *Brown*, 209 F.3d at 596. The limitation period resumed running on February 10, 2007, and it expired on December 21, 2009, long before plaintiff filed his complaint.

Plaintiff's claim based on the return of the envelope containing Judge Enslen's order is likewise time-barred. On May 20, 2006, the envelope was returned to the court rather than being forwarded to plaintiff RRF. (No. 1:05-cv-562, docket # 65, ID# 307). Plaintiff was aware of this

alleged error in mail handling no later than May 28, 2006, the date he wrote a letter to the court requesting a second copy of Judge Enslen's order denying defendants' motion to dismiss. (*Id.*, docket # 68, ID# 310). Twenty-three days of the limitations period passed before plaintiff "initiated" his grievance. The limitations period was tolled from June 13, 2006, through February 9, 2007. On February 10, 2007, the limitations period resumed running until it expired on January 18, 2010. Plaintiff filed his complaint weeks after the statute of limitations had expired on this claim.[8] I find that all plaintiff's section 1983 claims against defendant VanTatenhove and the unknown IBC mailroom supervisor are barred by the statute of limitations.

    4.    <u>Access to Courts</u>

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). In order to establish a viable claim for interference with his access to the courts, a plaintiff must show "actual injury" in a specific case. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). The actual injury requirement is not satisfied by just any type of frustrated legal claim. The actual injury must be connected to direct pursuit of a non-frivolous direct appeal from a criminal conviction, a habeas corpus petition or a civil rights action under 42 U.S.C. § 1983 to vindicate "basic constitutional rights." *Lewis*, 518 U.S. at 354; *see Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("'Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.'") (quoting *Lewis*, 518 U.S. at 353).

---

[8]In any event, the court records from the earlier lawsuit establish that plaintiff suffered no "actual injury" stemming from the return of Magistrate Judge Carmody's report and recommendation or Judge Enslen's order. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). The alleged errors in mail handling at IBC had no impact whatsoever on plaintiff's earlier lawsuit.

Plaintiff's allegations that ARUS Robertson caused a brief delay in his attorney's receipt of ankh cross vendor information and "case law in support of plaintiff's position that he was entitled to an award of costs" falls well short of alleging actual injury. The court takes judicial notice of its own records regarding plaintiff's earlier case, which make pellucid that plaintiff suffered no actual injury. Attorney Wesselhoff filed a timely motion to tax costs on plaintiff's behalf (No. 1:05-cv-562, docket #s 232-33, ID#s 1744-52), which Judge Neff granted in part, and which had the net effect of reducing plaintiff's liability for taxed costs after he lost a multi-day jury trial to a mere $9.52. Plaintiff's allegation that his attorney's failure to receive mail before December 12, 2008, "negatively impacted on Plaintiff's negotiations" is a conclusion, not a factual allegation of actual injury. *See Twombly*, 550 U.S. at 555. I find that plaintiff has not alleged a viable First Amendment access-to-courts claim against defendant Robertson.

5.  Retaliation

Plaintiff alleges that on November 3, 2008, RUO Morris wrote a misconduct charge against him for being out of place when Morris announced the evening prisoner count. Plaintiff did not heed Morris's announcement and continued to talk on the telephone. Morris then yelled at plaintiff to "get off the phone," which was overheard by defendant Robertson in her office. Robertson instructed Morris to write up the prisoner for being out of place. It was at that point that plaintiff decided it was time to terminate his telephone conversation and return to his cell. Plaintiff alleges that Robertson's instruction to write him up for being out of place when the evening prisoner count was called constitutes "retaliation"[9] in violation of his First Amendment rights.

---

[9]"Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "To assure that

At the pleading stage, the plaintiff is required to allege facts sufficient to establish a plausible First Amendment retaliation claim: (1) that the plaintiff had engaged in conduct protected by the First Amendment; (2) that an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) that the adverse action taken against the plaintiff was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). Plaintiff's telephone conversation with his attorney could satisfy the first element. The withdrawn misconduct charge could not satisfy the second element. It is well established that a withdrawn misconduct charge is not an action that would deter a person of ordinary firmness. *See Pope v. Bernard*, No. 10-1443, 2011 WL 478055, at * 2 (1st Cir. Feb. 10, 2011); *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011); *Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009). Plaintiff's complaint falls short on the third element as well. Plaintiff was out of place when RUO Morris called the evening prisoner count, and plaintiff continued talking on the phone rather than immediately terminating the call and returning to his cell. Under these circumstances, a prisoner should reasonably anticipate receiving a misconduct citation. Although plaintiff alleges that Morris called prisoner count five minutes early, for obvious reasons prison officials determine when the inmates are counted, not the inmates themselves. Plaintiff has not alleged facts establishing a plausible First Amendment claim against defendant Robertson. "A plaintiff must 'plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 129 S. Ct. at 1949). "A plaintiff falls short if []he pleads facts 'merely consistent with the defendant's liability'

---

prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct[.]'" *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 129 S. Ct. at 1949, 1950).

**Recommended Disposition**

For the reasons set forth herein, I recommend that (1) plaintiff's claims for declaratory and injunctive relief be dismissed because they are moot; (2) all claims against defendant Green-Chaney be dismissed pursuant to plaintiff's notice of voluntary dismissal; and (3) the remaining defendants' Rule 12(b)(6) motion (docket # 35) be granted and a judgment be entered dismissing plaintiff's claims against them.

Dated:  December 30, 2011           /s/  Joseph G. Scoville
                                    United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).