UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATHANIEL PORTER, # 129599,            )
a/k/a N. KALONJI OWUSU I,              )
      Plaintiff,                     )
                                       )   No. 1:10-cv-131
-v-                                    )
                                       )   HONORABLE PAUL L. MALONEY
JAMES VAN TATENHOVE, ET AL.,           )
      Defendants.                    )
_____)

### OPINION AND ORDER ADOPTING IN PART, REJECTING IN PART, AND MODIFYING IN PART REPORT AND RECOMMENDATION

    This is a civil rights action filed, pro se, by a prisoner under the control of the Michigan Department of Corrections ("MDOC"). When committed to the MDOC, Plaintiff's legal name was Nathaniel Porter. In 1994, after his commitment, Plaintiff had his name legally changed to Nathaniel Kalonji Owusu. (ECF No. 56-1 MDOC Memo 9-14-10.) In his amended complaint (ECF No. 53 "Complaint"), Plaintiff alleges claims under 42 U.S.C. § 1983 for violations of his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and for violations of the First and Fourteenth Amendments. Defendants filed a motion to dismiss. (ECF No. 35.) Plaintiff filed a response and brief. (ECF Nos. 42 and 43.) The magistrate judge issued a report recommending the motion to dismiss be granted. (ECF No. 52.) Plaintiff filed objections. (ECF No. 56.)

### STANDARD OF REVIEW

    After being served with a report and recommendation (R&R) issued by a magistrate judge, a party has fourteen days to file written objections to the proposed findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). A district court judge reviews de novo the portions of the R&R to which objections have been filed. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Only those objections that are specific are entitled to a de novo review under the statute. *Mira v.*

*Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam) (holding the district court need not provide de novo review where the objections are frivolous, conclusive or too general because the burden is on the parties to "pinpoint those portions of the magistrate's report that the district court must specifically consider"). The United States Supreme Court has held that the statute does not "positively require[] some lesser review by the district court when no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file an objection results in a waiver of the issue and the issue cannot be appealed. *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *see also Arn*, 474 U.S. at 155 (upholding the Sixth Circuit's practice). The district court judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

## ANALYSIS

The complaint includes 6 "counts." The first two counts are alleged against Defendant Van Tatenhove. Count 3 is alleged against the IBC Mailroom Supervisor. Counts 4 through 6 are alleged against Defendant Robertson.

Plaintiff identifies eight objections. Each is addressed below.

### A. Objection 1 - Mischaracterization of Plaintiff's First Amendment Rights (Count 1)

Plaintiff objects to the magistrate judge's mischaracterization of his First Amendment claim against Defendant Van Tatenhove. Plaintiff explains he has never asserted a right to be addressed by his legal name. Plaintiff also objects to an alleged insinuation that the name change is not legal.

Plaintiff's objection is OVERRULED. Fairly read, in his complaint, Plaintiff asserts that Defendant Van Tatenhove refused to include Plaintiff's legal name on handwritten passes that already included the name under which Plaintiff was committed or passes that only included

Plaintiff's MDOC identification number.  To the extent, if any, that Plaintiff's claim is mischaracterized, the error does not affect any of the analysis of Plaintiff's claim in Count 1.

**B.  Objection 2 - Injunction/Declaratory Relief**

Plaintiff objects to the magistrate judge's recommendation that his requests for injunctive and declaratory relief have become moot.  Plaintiff argues the prison policy is being violated throughout the state, not just at one facility.  Plaintiff then "withdraws his claim for declaratory/injunctive relief under the RLUIPA in the defendants' individual capacity." (Obj. 3.)

The Court considers Plaintiff's prayers for injunctive and declaratory relief withdrawn.

**C.  Objection 3 - Refusal to Recognize and Cross Reference Plaintiff's Legal Name (Count 1)**

Plaintiff objects to the magistrate judge's conclusion that Plaintiff has not established that Defendant Van Tatenhove's refusal to add Plaintiff's legal name to the pass, that already contained Plaintiff's commitment name, does not constitute a substantial burden on Plaintiff's free exercise of religion.  Plaintiff insists that the magistrate judge failed to address Plaintiff's First Amendment claim.

Plaintiff's objection is OVERRULED. Plaintiff's Count 1 is not a model of clarity. Reading Count 1, it is unclear if Plaintiff asserts (1) retaliation, (2) violation of his First Amendment free exercise of religion, (3) violation of the RLUIPA, or (4) all or some combination of those three options.  In the portion of the report and recommendation to which Plaintiff addresses his third objection, the magistrate judge recommends denying a claim under the RLUIPA.

   **1.  Count 1 as an RLUIPA claim**

Under the RLUIPA, an institutionalized plaintiff must establish that the government has

imposed a substantial burden on his or her religious exercise. 42 U.S.C. § 2000cc-1(a); *Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010). As explained in the report and recommendation, Plaintiff has not set forth sufficient facts alleging a substantial burden on his free exercise of religion. In his complaint, Plaintiff asserts that, within his religious beliefs, a name "is regarded as the Ninth Division of the soul and is integral to [] spiritual regeneration and resurrection." (Compl. ¶ 12.) Plaintiff complains that Defendant, generally, would only address Plaintiff by his prison number, call number, or commitment name. (*Id.* ¶ 21.) In Count 1, Plaintiff identifies several instances where he sought a pass to retrieve legal mail. In each instance, Defendant either wrote Plaintiff's commitment name or Plaintiff's prison number on the pass, and refused to write Plaintiff's legal name on the pass. (Compl. ¶¶ 27, 38, 40.) Plaintiff asserts, without explanation, that the use of his commitment name, or his prison number, on the pass chilled the exercise of his rights under the First Amendment.

Nowhere in his complaint does Plaintiff explain how or why the failure to add his legal name to the pass in any way impeded or burdened his religious practice or beliefs. Violations of MDOC's policies do not necessarily establish a constitutional violation. Under the relevant 12(b)(6) standard, this Court need not accept any legal conclusions in the complaint. Furthermore, the complaint must include more than a bare recitation of labels or the formulaic recitation of the elements of his claim. Plaintiff has not alleged facts that state a claim for relief that is plausible on their face. Plaintiff has not met this burden for an RLUIPA claim.

**2. Count 1 as a Claim under the First Amendment**

In his complaint, and in his objection, Plaintiff contends he has a constitutional right to have

his legal name cross-referenced on an MDOC "Prisoner pass."[1] Plaintiff is incorrect. Neither the Supreme Court nor the Sixth Circuit Court of Appeals has recognized a prisoner's First Amendment right to have their legal name and commitment name referenced on an MDOC "Prisoner Pass." In *Imam Ali Abdullah Akbar v. Canney*, 634 F.2d 339, 340 (6th Cir. 1980) (per curiam), the court held that an inmate has no constitutional right to require the prison to have all prison records reflect the prisoner's newly adopted legal name when the name was altered for religious reasons. *See Jordan v. Caruso*, No. 06-cv-10979, at * (E.D. Mich. Sept. 14, 2009) (Borman, J.) (adopting report and recommendation and holding that the plaintiff prisoner could not establish either a First Amendment claim or an RLUIPA claim on the basis that the defendants replaced the prisoner's door card with a door card that did not contain the plaintiff's legally-altered religious name).

Plaintiff cites several cases from other circuits. *E.g., Hakim v. Hicks*, 223 F.3d 1244, 1427-49 (11th Cir. 2000). Those cases are not binding on this Court. *Canney*, however, is binding. In addition, the holding in *Hakim* is readily distinguishable. *Hakim* dealt with a dual-name policy for prison identification cards that were used to secure prison services, like the notary public and banking. *Hakim*, 223 F.3d at 1247. Evaluating the elements outlined in *Turner v. Safley*, 482 U.S. 78, 89 (1987), the court concluded that the prison's refusal to include both the commitment name and the prisoner's legally altered religious name on the prison identification card violated the prisoner's constitutional free exercise of religion. *Hakim*, 223 F.3d at 1249. The relevant holding in *Hakim* has been limited to situations involving critical prison documents, like identification cards, which were used to secure essential services and the holding has not been applied to all prison

---

[1] Based on Plaintiff's attached exhibits (ECF No. 56-1 PgID 266-67), the document titled "Prisoner Pass" is the MDOC's version of a hall pass.

5

documents. *See Amun v. Culliver*, No. 04-0131-BH-M, 2006 WL 2989212, at * 4-* 5 (S.D. Ala. Oct. 18, 2006) (finding no requirement to include both names on prison visitor lists, inmate location lists, and internal prison documentation and correspondence); *Muhammad v. McDonough*, No. 8:04cv441T27EAJ, 2006 WL 3614937, at * 3 (M.D. Fla. Dec. 11, 2006) (finding no requirement to include both names on the prison's internal movement list or on clothing tags). An MDOC prison pass is more like the internal prison documentation and internal movement lists than like a prison identification card.

### 3. Count 1 as a Claim for Retaliation

In his objection, Plaintiff contends he was engaged in protected conduct when he asked Defendant to cross-reference Plaintiff's legal name on the pass. Because this Court concludes that there is no constitutional right to have one's legally-altered religious name cross-referenced on a prison pass, Plaintiff is incorrect that he was engaged in protected conduct.

### D. Objection 4 - Statute of Limitations (Counts 1-3)

Plaintiff objects to the magistrate judge's conclusion that Plaintiff's claims against Defendants are barred by the statute of limitations. Plaintiff argues the magistrate judge did not address Plaintiff's retaliation claim against Defendant Van Tatenhove. Plaintiff also argues that the magistrate judge did not address his claim against Defendant Van Tatenhove in Count 2 for denial of access to the court by interference with legal mail.

Plaintiff's claims arising from Defendant Van Tatenhove's refusal to cross-reference Plaintiff's legal name on the pass accrued on the day each pass was issued. The Court finds no error with the calculations in the report and recommendations with regard to those claims. On this point, Plaintiff's objections are OVERRULED.

Plaintiff does not object to the magistrate judge's recommendation that his claim against IBC mailroom supervisor is time-barred.[2]

To the extent that Plaintiff alleges a retaliation claim and a claim for interference with legal mail against Defendant Van Tatenhove, the Court concludes that those claims would not be barred by the statute of limitations. Both claims would have accrued on the date when Plaintiff learned that Defendant Van Tatenhove caused his legal mail to be returned to the Court as "refused."[3] Prior to June 12, 2006, Plaintiff was aware that his mail had been returned to the Court, but was not aware why. On June 12, 2006, Plaintiff received a copy of the docket sheet in case No. 5:05-cv-562, where he learned that Defendant Van Tatenhove caused his legal mail to be returned to the court as "refused." Plaintiff filed his grievance the next day, June 13, 2006. As explained in the report and recommendation, Plaintiff's claim was tolled from June 13 until the grievance process was completed, on February 9, 2007, restarting the clock on his claim on February 10, 2007. Plaintiff filed this complaint on February 9, 2010. Under this calculation, Plaintiff's complaint was filed exactly three years, excluding the tolling period, after his retaliation and interference claims accrued. On this point, Plaintiff's objection is AFFIRMED and this portion of the report and recommendation is REJECTED.

**E.  Objection 5 - Failure to Serve IBC Mailroom Supervisor (Count 3)**

Plaintiff asserts the Court failed to serve the IBC Mailroom Supervisor, in violation of Rule

---

[2]As explained under Objection 6, even if this claim is timely, Plaintiff has failed to allege facts sufficient to establish an access to the court claim against this Defendant.

[3]Even though the claims might not be time-barred, the Court concludes Plaintiff's allegations fail to state a claim upon which relief may be granted. Plaintiff's retaliation claim is discussed as part of Plaintiff's third objection. Plaintiff's interference with legal mail will be discussed as part of Plaintiff's sixth objection.

4 of the Federal Rules of Civil Procedure.

Plaintiff's objection is OVERRULED. Plaintiff fails to identify with any specificity how this objection addresses any aspect of the report and recommendation. Whether this individual was served does not implicate whether the claim against this individual was time-barred.

**F. Objection 6 - Access to the Court Claims (Counts 2, 4, and 5)**

Plaintiff objects to the magistrate judge's conclusion that Plaintiff's allegations fail to state a viable First Amendment access to the court's claim against Defendant Robertson. Plaintiff also argues the magistrate judge did not address his Fourteenth Amendment claim for access to the courts.

Plaintiff's objection is OVERRULED. In Counts 4 and 5, Plaintiff alleges access to the court claims against Defendant Robertson. As explained in the report and recommendation, the public court records from the earlier lawsuit, on which these claims are based, establish that Plaintiff did not suffer any "actual injury" from any of the alleged errors or interferences. Plaintiff's attempt to distinguish between the First and Fourteenth Amendments is not supported by legal authority. The "actual injury" element is essential for both a First Amendment and a Fourteenth Amendment claim for access to the court. *See Perry v. Honton*, 213 F. App'x 377, 377-78 (6th Cir. 2006) (per curiam) (noting that access to the court is protected by both the First and Fourteenth Amendments and that, for the claim, a plaintiff must show actual injury); *Sims v. Landrum*, 170 F. App'x 954, 956 (6th Cir. 2006) (citations omitted) (same). For Count 2, Plaintiff repeatedly asserts that Defendant Van Tatenhove caused him to miss a court-imposed deadline in the prior case, No. 5:05-cv-562. The public court records tell a different story, which are succinctly summarized on pages 6 and 7 and in footnote 7 of the report and recommendation and which explain why Plaintiff suffered no actual

8

injury. For Count 3, Plaintiff insists that Defendant IBC Mailroom Supervisor should have confirmed that Plaintiff refused to accept legal mail before returning the mail to the Court. The same facts and reasoning outline in the report for Count 2 apply here.

To the extent necessary, report is MODIFIED for the purpose of Counts 2 and 3 to reject the access to the court claims against Defendant Van Tatenhove and Defendant IBC Mailroom Supervisor.

### G. Objection 7 - Retaliation (Count 6)

Plaintiff objects to the magistrate judge's conclusion that Plaintiff failed to allege sufficient facts to support a claim for retaliation against Defendant Robertson.

Plaintiff's objection is OVERRULED. According to the complaint, Plaintiff was on the phone with his attorney on November 3, 2008, when, although 5 minutes early, RUO Morris announced count-time. Plaintiff admits he did not get off the phone and that Morris ordered Plaintiff to "get off the phone." (Compl. ¶¶ 96 and 114.) Morris's directive was overheard by Defendant Robertson, who asked Morris to identify the prisoner not complying with the order. After Morris identified Plaintiff, Robertson said to "write him up." (*Id.* ¶¶ 97 and 114.) Plaintiff alleges the next day, he was interviewed about the major misconduct report, which was subsequently withdrawn after the hearings investigator determined that the charge had been "falsified upon instruction by Defendant Robertson." (*Id.* ¶¶ 99 and 114.) Plaintiff then alleges that, two weeks later, another prisoner overheard Defendant Robertson stating that she was tired of Plaintiff's court antics and was going to get him. (*Id.* ¶¶ 100 and 115.)

A claim for retaliation requires a plaintiff to allege and establish three elements: (1) that the prisoner was engaged in protected conduct, (2) that an adverse action was taken against the prisoner

that would deter a prisoner of ordinary firmness from continuing to engage in that conduct, and (3) a causal connection between the first two elements, such that the prisoner's protected action motivated the defendant, at least in part, to take the adverse action. *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). The report and recommendation accurately states that a telephone discussion with an attorney may constitute protected conduct. However, in order for that protected conduct to form the basis for retaliation, the defendant must know if that Plaintiff was engaged in protected conduct. *See Thaddeus-X*, 175 F.3d at 387 n.3 ("Some cases cite a four-pronged test, adding a second element that the defendant knew of the plaintiff's protected conduct. This element is captured by the third prong above: the defendant must have known about the protected activity in order for it to have motivated the adverse action."). Nowhere in the complaint or objection does Plaintiff allege that either Morris or Robertson had any knowledge of the subject of Plaintiff's telephone call or even that he was talking to his attorney. Even if Morris might have known who Plaintiff was talking to or what Plaintiff was talking about, there is no allegation that Morris ever passed that knowledge to Robertson. Therefore, the report and recommendation correctly concludes that Plaintiff has not alleged facts sufficient to establish the third element of his retaliation claim against Defendant Robertson.

## CONCLUSION

For the reasons outlined in the report and recommendation, as accepted and modified above, Defendants' motion to dismiss (ECF No. 35) is **GRANTED.** Plaintiff's claims are either barred by the statute of limitations, or the complaint fails to allege facts sufficient to state a claim.

**ORDER**

Consistent with the contemporary opinion, **IT IS HEREBY ORDERED** that:

1. The report and recommendation (ECF No. 52) is **ADOPTED IN PART, REJECTED IN PART, AND MODIFIED IN PART.**

2. Defendants' motion to dismiss (ECF No. 35) is **GRANTED.** Count 1 is barred by the statute of limitation and also fails to state a claim on which relief may be granted.  Counts 2 through 6 all fail to state a claim upon which relief may be granted.  Accordingly, all counts in the complaint are **DISMISSED WITH PREJUDICE.**

Date:   February 8, 2012                                                  /s/ Paul L. Maloney
                                                                                            Paul L. Maloney
                                                                                           Chief United States District Judge